# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL BOYD, | : | |
|     Plaintiff | : | No. 3:20-cv-02403 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| BERNADETTE MASON, | : | (Magistrate Judge Saporito) |
| Superintendent of SCI-Retreat, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

On May 28, 2021, Magistrate Judge Saporito issued a Report and Recommendation (Doc. No. 11), recommending that the Court dismiss ten of the twenty Defendants set forth in Plaintiff Paul Boyd ("Plaintiff")'s pro se complaint (Doc. No. 1).[1] Neither party filed timely objections, and on June 23, 2021, the Court adopted the Report and Recommendation and directed the Clerk of Court to terminate the following Defendants (collectively, "Terminated Defendants"): (1) Superintendent Bernadette Mason, Deputy Superintendents Laura Banta and Charles Stetler, an unnamed "Major of Security," all of whom are State Correctional Institution ("SCI") at Retreat ("SCI-Retreat") employees (collectively, the "SCI-Retreat Defendants"); (2) Chief Grievance Officer Denise Varner; (3) Jennifer Mahally;[2] (4) Deputy Secretary of Corrections for the Northeast Region John Wetzel; (4) an unnamed "Deputy Secretary of Corrections for the Northeast Region"; and (5) the offices of the Luzerne County Sheriff and Luzerne County District Attorney (the "Luzerne Defendants"). (Doc. No. 14.) On June 28, 2021, Plaintiff filed a now-pending motion for an extension of time to file objections to the

---

[1] Magistrate Judge Saporito screened the complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii), as well as 42 U.S.C. 1997e(c)(1). (Doc. No. 11 at 6.)

[2] According to an exhibit to Plaintiff's complaint, Jennifer Mahally is a Superintendent's Assistant at SCI-Houtzdale, where Plaintiff is currently housed. (Doc. No. 1 at 28.)

Report and Recommendation. (Doc. No. 15.) Four days later, Plaintiff filed objections to Magistrate Judge Saporito's recommendations. (Doc. No. 16.)

In seeking an extension of time to file objections, Plaintiff asserts that he did not receive Magistrate Judge Saporito's May 28, 2021 Report and Recommendation until June 22, 2021, and that access to the prison law library is restricted due to the COVID-19 pandemic. (Doc. No. 15 at 1.) Given these circumstances, the Court will grant Plaintiff's motion for an extension of time (Doc. No. 15) and deem his objections (Doc. No. 16) timely. In doing so, the Court will overrule Plaintiff's objections but grant him leave to amend his complaint to allege policy-based claims against the SCI-Retreat Defendants relating to the failure to place a metal detector at the SCI-Retreat recreation yard's entrance on the date of his assault.

## I. BACKGROUND

Plaintiff's complaint asserts an array of claims pursuant to 18 U.S.C. § 1983, all stemming from his August 5, 2019 assault by a fellow inmate in the SCI-Retreat recreation yard. (Doc. No. 1 ¶ 1.) Plaintiff alleges that the assault would not have occurred but for the removal "of the full-body, walk-through metal detector" at the recreation yard's entrance. (Id. ¶ 3.) He alleges that SCI-Retreat has a "policy or practice of placing a metal detector at the outdoor recreation yard entrance" only when personnel expected a facility inspection, which policy or practice "could not have been maintained without the knowledge, permission, or at the direction of supervisory correctional officials and prison administration officials," including, in relevant part, the SCI-Retreat Defendants. (Id. ¶ 6; see id. ¶ 5 (averring that removal of the metal detector on the date of the assault "could not have been accomplished without the knowledge, permission, or at the direction of supervisory correctional officials and administration officials").) Plaintiff also avers, inter alia, that correctional staff failed to investigate his claims and grievances.

In recommending that the Court dismiss the Terminated Defendants with prejudice and direct that they be terminated from this action, Magistrate Judge Saporito first concluded that Plaintiff failed to state a prima facie failure-to-investigate claim against either the SCI-Retreat Defendants or the Luzerne Defendants. (Doc. No. 11 at 9.) Magistrate Judge Saporito then determined that Plaintiff failed to allege any "personal involvement whatsoever" by three SCI-Retreat Defendants—Stetler, Banta, and Mason—as well as Mahally, Varner, Wetzel, and the unnamed Deputy Secretary for the Northeast Region. (Id. at 10-11 (noting that, "if a prison official's only involvement is investigating or ruling on an inmate's grievance after the incident giving rise to the grievance has occurred, there is no personal involvement on the part of that official").) Accordingly, Magistrate Judge Saporito recommended "that [P]laintiff's § 1983 claims against these [D]efendants for supervisory or vicarious liability be dismissed for failure to state a claim upon which relief can be granted." (Id. at 12.) Finding "no other claims [asserted] against" the Terminated Defendants, Magistrate Judge Saporito recommended that they be dismissed. (Id. at 13.) Magistrate Judge Saporito further concluded that amendment would be inequitable or futile and, as such, recommended that the Clerk of Court terminate those Defendants from this action. (Id.)

Plaintiff objects to Magistrate Judge Saporito's Report and Recommendation on two grounds. (Doc. No. 16.) Regarding § 1983's requirement that a defendant have personal involvement in the alleged wrongful conduct, Plaintiff argues that certain supervisory Defendants, including the SCI-Retreat Defendants, Mahally, Wetzel, and the unnamed Deputy Secretary for the Northeast Region, "have some measure of policymaking authority in the institutional setting . . . ." (Id. at 3.) He further argues that "it is entirely reasonable to infer that they must have either directed their subordinates to remove the body scanner from the recreation

3

yard, or had knowledge of or acquiesced in the body scanner's removal."  (Id. (citing Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) (noting that "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations" (internal quotation marks omitted) (alteration in original))).)

Plaintiff next contends that Magistrate Judge Saporito incorrectly recommended that the Court dismiss his failure-to-investigate claims against the Luzerne Defendants.  (Id. at 3.) Plaintiff submits that he sufficiently pleaded a claim for violations of his equal protection rights, arguing that these Defendants did not investigate his attack because he is "Black [and/or] a prisoner[,] or [because] the incident complained of was a Black-on-Black crime."  (Id. at 3-4.) He further asserts that "these Defendants each have policymaking authority over their respective offices; therefore, they, as well as the municipality on whose behalf they acted or failed to act, may be held liable under §[]1983 based on their implementation of or adherence to a policy, practice, or custom that discriminated against Plaintiff" because of his race, his status as a state prisoner, or the fact that the "incident was Black-on-Black crime . . . ."  (Id. at 4.)[3]

Regarding both of his objections, Plaintiff submits that the "inadequacies of [his] complaint [are] directly attributable" to the temporary closing of the law library due to measures taken in response to the COVID-19 pandemic, his "literacy issues" and "learning and mental[]" disabilities, and the lack of any "policy or program [at his current facility] . . . provid[ing] him [with] access to persons professionally trained and competent to provide him with legal assistance," or a program that would facilitate prisoners in "assist[ing] each other in the

---

[3] Although Magistrate Judge Saporito did not reach the issue of whether Plaintiff's allegations of race-based discrimination sufficed to state a claim for relief, the Court concludes, see infra, that such allegations fail to state a plausible claim for violation of his equal protection rights.

preparation of legal papers." (Id. at 5.) Plaintiff therefore seeks to conduct limited discovery concerning SCI-Retreat's internal operating procedures—particularly given the fact that Plaintiff no longer resides at SCI-Retreat—and the extent to which Defendants had any personal involvement in the conduct that allegedly caused his injuries.

## II.   DISCUSSION

Having reviewed and considered Plaintiff's objections to Magistrate Judge Saporito's Report and Recommendation, the Court agrees with Magistrate Judge Saporito's conclusion that Plaintiff has failed to state a viable claim against any of the now-dismissed Defendants. In deciding whether to accept, reject, or modify the Report and Recommendation, the Court is to make a de novo determination of those portions of the Report and Recommendation to which an objection is made. See 28 U.S.C. § 636(b)(1). In performing the mandatory screening function under 28 U.S.C. § 1915A, 28 U.S.C. § 1915(e)(2)(B)(ii), and 42 U.S.C. 1997e(c)(1), a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); Banks v. Cty. of Allegheny, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008); Barrett v. C.O. Matters, No. 1:14-cv-1250, 2015 WL 5881602, at *5 (M.D. Pa. Sept. 30, 2015). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions proffered as factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside,

578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### A. Equal Protection Claim for Failure to Investigate

Regarding Plaintiff's challenge to Magistrate Judge Saporito's recommendation that the Court dismiss his failure-to-investigate claims against the Luzerne Defendants, the Court finds Plaintiff's objections unavailing. Plaintiff maintains that he has stated an equal protection claim against these Defendants based on their alleged failure to investigate his assault because of his race, his status as a prisoner, and the fact that the incident "was a Black-on-Black crime." (Doc. No. 16 at 3.) "To state an equal protection claim, [Plaintiff] must allege that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class . . . ." See Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016); see also Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) (holding that a § 1983 "claim must fail" if the plaintiff does not allege the "existence of similarly situated individuals . . . who [were] treated differently . . ."). Plaintiff has failed to assert any such allegations here. His conclusory allegation that Defendants "failed to conduct an adequate investigation because of their own racial bias is not enough to state a claim for a violation of a Plaintiffs equal protection rights." See Tart v. Sellers, No. 1:13-cv-282, 2013 WL 5937413, at *3 (W.D.N.C. Nov. 4, 2013). Moreover, because "inmates are not [members of] a protected class," Plaintiff cannot state an equal protection claim based on his status as an inmate. Plaintiff's objections to this aspect of the Report and Recommendation are therefore unavailing.

### B. Eight Amendment Claim for Deliberate Indifference

As to Plaintiff's objections concerning his deliberate indifference claims, the Court initially turns to his contention that Magistrate Judge Saporito did not squarely address his

allegation that certain supervisory Defendants were personally involved in the alleged policy or custom pursuant to which a metal detector was placed at the recreation yard's entrance only during facility inspections. Although the Report and Recommendation does not expressly state that Plaintiff has failed to allege the personal involvement of any supervisory Defendants in any purported metal detector-related policy or custom, it does state that Plaintiff has failed to allege any claims against Defendants for their "managerial" or "supervisory" roles. (Doc. No. 11 at 13; see id. at 11.) Thus, contrary to Plaintiff's contention, Magistrate Judge Saporito appears to have considered his policy-based claim, albeit in a summary fashion.

Turning to the merits, the Court agrees with Magistrate Judge Saporito's conclusion that Plaintiff has failed to state a claim against any of the supervisory Defendants, including the SCI-Retreat Defendants, based on an alleged policy or custom concerning the nonuse of a metal detector. To adequately plead his policy-based Eighth Amendment claim under § 1983, Plaintiff must allege that Defendants "participated in violating [his] rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." See Santiago, 629 F.3d at 129 (internal quotation marks omitted) (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). He must also allege that they did so "with deliberate indifference to the consequences," and that the "policy, practice or custom [] directly caused [the] constitutional harm." See A.M. ex rel. J.M.K., 372 F.3d at 586 (internal quotation marks omitted) (alteration in original). A "mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement." See Stroman v. Wetzel, No. 1:16-cv-2543, 2019 WL 931653, at *7 (M.D. Pa. Feb. 26, 2019).

As reflected in Magistrate Judge Saporito's Report and Recommendation, Plaintiff's

7

allegations of personal involvement amount to a mere "hypothesis" that one or more Defendants were personally involved in the policy or custom concerning the alleged selective use of a metal detector at the recreation yard's entrance.  Further, while courts have entertained failure-to-protect claims based on the failure to use metal detectors, those cases involved allegations that prison officials had knowledge of a pervasive problem with prior attacks and showed deliberate indifference by failing to use metal detectors to prevent subsequent attacks.  See, e.g., Warren v. Goord, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007) (denying a motion to dismiss a claim that a metal detector would have prevented the plaintiff-inmate's attack, where the plaintiff had alleged that the defendants were "aware that assaults and stabbings regularly took place in the prison yards," that weapons were often stored in the yards, and that an inmate had previously been killed in the yard for lack of metal detectors); cf. Emile v. SCI-Pittsburgh, No. 2:04-cv-974, 2008 WL 4190782, at *6 (W.D. Pa. Sept. 10, 2008) (granting summary judgment based on the lack of "evidence [] show[ing] that [the defendants] w[ere] aware of a pervasive risk of inmate attacks from metal objects in the exercise yards . . .").[4]  However, the Court will permit Plaintiff to amend his complaint to assert his policy-based claims as to the SCI-Retreat Defendants because, in the Court's view, it cannot be said that granting leave to amend will necessarily be futile as to those Defendants.[5]

---

[4] See also Hannah v. Vanguilder, No. 08-cv-441, 2010 WL 1372385, at *5 (N.D.N.Y. Feb. 11, 2010) (recommending the denial of summary judgment as to personal involvement but recommending that the court grant summary judgment on a claim that a prison facility implemented a policy or custom under which metal detectors were used sporadically, noting that, "[a]t best, [the plaintiff had] assert[ed] that defendants were negligent in failing always to use the metal detectors"), report and recommendation adopted by No. 9:08-cv-441, 2010 WL 1404276 (N.D.N.Y. Apr. 7, 2010).

[5] Plaintiff has not stated a similar claim against the other Terminated Defendants.  Plaintiff's allegations against Mahally and Varner concern responses to grievances and not to the nonuse of metal detectors, and his allegations against the Luzerne Defendants are wholly unrelated to this aspect of his complaint.  Moreover, Plaintiff's supervisory claims against Wetzel and the

For the foregoing reasons, to the extent that Plaintiff objects to Magistrate Judge Saporito's recommendation that the Court dismiss Plaintiff's claims against the Terminated Defendants, the Court overrules his objection. Notwithstanding that ruling, the Court will permit Plaintiff to amend his complaint to correct the deficiencies identified herein, supra, as to his policy-based claim against the SCI-Retreat Defendants for deliberate indifference arising from the alleged removal of the metal detector at the recreation yard's entrance except during facility inspections. The Court emphasizes that it will permit Plaintiff to file an amended complaint asserting such claims only as to the SCI-Retreat Defendants, i.e., Bernadette Mason, Charles Stetler, Laura Banta, and the unnamed Major of Security. An appropriate Order follows.

        s/ Yvette Kane
        Yvette Kane, District Judge
        United States District Court
        Middle District of Pennsylvania

---

unnamed Deputy Secretary, neither of whom are stationed at SCI-Retreat, fall far short of stating a claim for direct participation in the day-to-day placement of metal detectors at SCI-Retreat. The complaint's allegations as to these two Defendants amount to a claim of respondeat superior, i.e., that these Defendants should be held liable merely because of their supervisory roles. Such allegations are insufficient to state a claim under § 1983. See Stroman, 2019 WL 931653, at *6 (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)) (dismissing § 1983 claims against Wetzel and a superintendent where Plaintiff was seeking to hold them "liable for the actions of their subordinates" merely based on their supervisory roles). Thus, granting to leave as to these Defendants would be futile.